# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rogelia Vargas-Galicia,<br><br>       Defendant-Petitioner,<br> vs.<br><br>United States of America,<br><br>       Plaintiff-Respondent. | Case No. 09-CV-0964-IEG<br>Case No. 03-CR-3401-IEG<br><br>ORDER DENYING PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO § 2255 [Doc. No. 89]. |

   Before the Court is Rogelia Vargas-Galicia's ("Petitioner") Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Petitioner's Motion"). [Doc. No. 89]. On May 7, 2009, the Court ordered Respondent to show cause why Petitioner's Motion should not be granted. Respondent filed an opposition to the motion on June 1, 2009. [Doc. No. 91]. On July 13, 2009, Petitioner filed a reply to the Respondent's opposition. [Doc. No. 94]. Having considered the parties' arguments and for the reasons discussed below, the Court determines that it can proceed without an evidentiary hearing and DENIES Petitioner's Motion.

## BACKGROUND

   By indictment of December 17, 2003, a federal grand jury charged Petitioner with attempted entry after deportation in violation of 8 U.S.C. § 1326. Petitioner was convicted on April 24, 2006 and sentenced to 86 months in prison and three years of supervised release. [Doc. No. 56]. Petitioner appealed, arguing that: (1) the government failed to present at trial sufficient evidence of his prior

1 removal; (2) the February 1994 deportation was invalid; and (3) the 86-month sentence was
2 unreasonable. (Appellant's Opening Brief at 2 (June 5, 2007).) The Court of Appeals for the Ninth
3 Circuit affirmed the conviction and sentence on November 8, 2007, and the Supreme Court denied a
4 petition for writ of certiorari on April 21, 2008.

5       Prior to the jury trial, this Court heard argument and testimony related to Petitioner's motion
6 to dismiss the indictment due to an invalid deportation, which focused on Petitioner's February 1994
7 deportation hearing. The Court found that the immigration judge ("IJ") presiding over that hearing
8 failed to "evaluate the defendant's potential avenues for relief from deportation on the record." (R.T.
9 at 3-4 (June 24, 2005).[1]) As a result, this Court concluded that "the February 1994 hearing did not
10 comport with the requirements of the Due Process Clause." (Id. at 4.) However, the Court also
11 determined that no prejudice resulted from this violation because Petitioner had no relief available to
12 him at the time of the February 1994 deportation hearing. (Id. at 9-14.) As the Court emphasized, at
13 that hearing, Petitioner "was not eligible to adjust his status under 8 U.S.C. Section 1255. He was not
14 eligible for suspension of deportation under 8 U.S.C. Section 1254. And he was ineligible for a waiver
15 of [sic] under Section 212(h) [referring to 8 U.S.C. § 1182(h) (1994)]." (Id. at 14.)

16       In making the above ruling on prejudice, the Court determined that a 1994 statute made
17 "ineligible for adjustment of status" those aliens who were "convicted of two or more offenses . . . for
18 which the aggregate sentences of confinement *actually imposed* were five years or more." (Id. at 4-5,
19 9-10 (emphasis added).) Although there was some dispute as to how much time Petitioner *actually*
20 *served* (see id. at 8-9), the Court found that Petitioner fell within the ambit of the above statute due
21 to the following *imposed* convictions: (1) "June 13th 1988 conviction, 60 days," (2) "September 21st,
22 1988 conviction, 40 days," (3) "February 14th, 1990 conviction, 365 days," (4) "a March 1991
23 conviction, two days," (5) "August 24th, 1992 conviction, 180 days," and (6) "probation revocation
24 of four years plus 180 days" in 1992. (Id. at 6-9.) Because these imposed sentences in aggregate were
25 longer than five years, the Court concluded that Petitioner did not qualify for any remedy at the time
26 of his February 1994 deportation hearing, "even had the Immigration Judge gone into his status that
27 he was married to a U.S. citizen and discussed [his then-pending I-130 petition] with him." (Id. at 9.)

28

---

[1] "R.T." refers to the Reporter's Transcript of Proceedings.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, the court may vacate, set aside, or correct a sentence which was "imposed in violation of the Constitution or laws of the United States." Petitioner is entitled to an evidentiary hearing on his claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The applicable standard is whether "'the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'" United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984)). Thus, no evidentiary hearing is necessary where petitioner's allegations, "'when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal.'" Id.

## DISCUSSION

In the present case, Petitioner essentially alleges two overlaying grounds for relief: (1) ineffective assistance of trial and sentencing counsel, and (2) unreasonable sentence. Within the ineffective assistance of counsel claim, however, Petitioner raises a number of sub-arguments. The Court will address each one of the sub-arguments in turn.

**I.  Ineffective assistance of counsel**

   A.  Legal standard

In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test articulated in Strickland v. Washington, 466 U.S. 668 (1984). "First, the petitioner must demonstrate that counsel's performance was deficient and 'fell below an objective standard of reasonableness.'" Hebner v. McGrath, 543 F.3d 1133, 1137 (9th Cir. 2008) (quoting Strickland, 466 U.S. at 688). In this regard, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the defendant must overcome a strong presumption "that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"Second, the petitioner must establish prejudice by demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Hebner, 543 F.3d at 1137 (quoting Strickland, 466 U.S. at 694). "'A reasonable probability

1  is a probability sufficient to undermine confidence in the outcome.'" <u>Matylinsky v. Budge</u>, 577 F.3d
2  1083, 1091 (9th Cir. 2009) (quoting <u>Strickland</u>, 466 at 694).

3       B.    <u>Analysis</u>

4  Construing Petitioner's motion liberally, it appears he asserts that trial counsel, Ms. Jeanne
5  Knight, provided ineffective assistance because: (1) she failed to put before the Court evidence of
6  "extreme hardship" to Petitioner's family members that would have justified a Section 212(h) waiver
7  (Petitioner's Motion at 5); (2) she failed to attack the validity of March 17, 1997 deportation
8  proceedings (<u>id.</u> at 8-11); and (3) she failed to pursue any of the recommendations given by
9  Petitioner's certified specialist (<u>id.</u> at 11-12).

10 In addition, Petitioner asserts that sentencing counsel, Mr. Frank Morell, provided ineffective
11 assistance because: (4) he failed to find out the outcome of Petitioner's conviction in state court under
12 Section 11550 of the California Health & Safety Code (<u>id.</u> at 13-15); and (5) he conceded to the Court
13 that, after reading everything, he believed that there was nothing on any of Petitioner's four
14 deportations that would have saved him from the Court's judgment (<u>id.</u> at 15).

15           *i.*    *Counsel's failure to put before the Court evidence of "extreme hardship."*

16 Petitioner asserts that Ms. Knight failed to put before the Court evidence of "extreme hardship"
17 to Petitioner's family members, which would have justified a waiver under Section 212(h).
18 (Petitioner's Motion at 5.) Specifically, Petitioner argues that Ms. Knight should have presented to
19 the Court evidence showing that the February 1994 deportation resulted in an unusual "'severance of
20 family ties'" and caused "'unusually severe financial hardship'" to Petitioner's family. (<u>Id.</u> at 7.)

21 Such conclusory statements, however, are insufficient to show that counsel's performance was
22 deficient. It is well-established that "[c]onclusory allegations which are not supported by a statement
23 of specific facts do not warrant habeas relief." <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994) (citation
24 omitted). In the present case, Ms. Knight did put evidence before the Court demonstrating that, at the
25 time of the February 1994 deportation hearing, Petitioner was married to a U.S. citizen and had two
26 children who were also U.S. citizens. (<u>See</u> R.T. at 23, 27-31 (May 31, 2005).) Notably, she presented
27 evidence arguing that the I.J. erred in failing to weigh the equities (including the existence of a wife
28 and children who were U.S. citizens) in determining whether Petitioner was entitled to a suspension

1  of deportation. (Id.) Because it is unclear what more Ms. Knight could have presented to the Court on
2  this issue, and because neither Petitioner's motion nor his reply to the opposition provide any
3  additional clarity, the Court finds Petitioner failed to carry his burden in showing that Ms. Knight's
4  performance on this issue was "deficient" and fell below "'an objective standard of reasonableness.'"
5  See Hebner, 543 F.3d at 1137 (quoting Strickland, 466 U.S. at 688).

6        Moreover, Petitioner cannot demonstrate any resulting prejudice. To be entitled to a
7  suspension of deportation pursuant to Section 212(h), the defendant must make a showing of
8  "significant actual or potential injury." Hassan v. I.N.S., 927 F.2d 465, 467-68 (9th Cir. 1991). This
9  means he must demonstrate "extreme hardship" that is beyond "[t]he common results of deportation."
10 Id. Although the Court does not wish to trivialize the upheaval and financial burden that accompanies
11 any deportation, the case law compels that mere allegations of "'severe financial hardship'" and
12 "'severance of family ties'" are insufficient for purposes of relief under Section 212(h). See, e.g.,
13 United States v. Arce-Hernandez, 163 F.3d 559, 563-64 (9th Cir. 1998) (finding no "extreme
14 hardship" where the defendant was required to leave his wife, who was in ill health, and his children,
15 even though they were going to face "economic hardship[s]" upon his deportation); Hassan, 927 F.2d
16 at 467-68 (concluding that "emotional hardship to Hassan's spouse and children, and the financial
17 strain deportation would cause for the family," did not qualify as "extreme hardship").

18       Accordingly, Petitioner's claim for ineffective assistance of counsel on this ground fails.

19       *ii.    Counsel's failure to attack the 1997 deportation hearing.*

20 Petitioner next asserts that Ms. Knight provided ineffective assistance because, in addition to
21 attacking his February 1994 deportation proceedings, she could have also attacked the 1997
22 proceedings. (Petitioner's Motion at 8-11.) According to Petitioner, at these deportation proceedings
23 he was "clearly eligible to adjust status" because he still had an approved visa available for him
24 through his wife, and he was finally qualified for adjustment of status under 8 U.S.C. § 1255(i), which
25 came into effect on October 1, 1994. (Id. at 11.) Petitioner's argument fails, however, because the
26 government never relied on the 1997 deportation proceedings in its case-in-chief, and therefore it
27 would have been irrelevant for Petitioner's counsel to attack the validity of those proceedings.
28

1    Under Section 1326, pursuant to which Petitioner was convicted in the present case, the
2 government had to prove that Petitioner (1) was an alien who has previously "been denied admission,
3 excluded, deported, or removed" from the United States and (2) has subsequently "enter[ed],
4 attempt[ed] to enter, or [was] at any time found in, the United States," without having received
5 appropriate permission or consent from the Attorney General or his designate. See 8 U.S.C. § 1326(a).

6    Although Petitioner has been ordered deported on three prior occasions (February 1994,
7 August 1994, and March 1997), the government based its case solely on the first deportation, which
8 took place in February 1994. (See R.T. at 14, 19 (June 24, 2005); R.T. at 14, 44-51 (June 28, 2005).)
9 As long as that deportation was valid, the government was not required to rely on either of the other
10 two deportations. See United States v. Gomez-Gutierrez, 140 F.3d 1287, 1288 (9th Cir. 1998) (per
11 curiam) ("There is no dispute that the predicate act for [the defendant's] conviction will be met if any
12 one of his three prior deportations are valid."). Seeing as both this Court and the Ninth Circuit have
13 found that Petitioner's February 1994 deportation was valid (see R.T. at 19 (June 24, 2005); United
14 States v. Vargas-Galicia, 253 Fed. Appx. 715, 716 (9th Cir. 2007)), it was irrelevant for purposes of
15 Section 1326 if either of the other two *subsequent* deportations was valid.

16    Accordingly, Petitioner's claim of ineffective assistance of counsel on this ground fails.

17        *iii.    Counsel's failure to pursue the recommendations by Mr. Bejar.*

18    Petitioner's Motion, read liberally, also appears to assert that Ms. Knight provided ineffective
19 assistance by failing to pursue any of the recommendations given by Petitioner's certified specialist,
20 Mr. Jan Joseph Bejar. (See Petitioner's Motion at 11-12.) However, those recommendations merely
21 reiterate that Petitioner might have had a remedy available to him, and therefore might have suffered
22 prejudice, at the 1997 deportation proceedings. (See id. at 19-20.) As already noted above, whether
23 such a remedy was available to Petitioner, and whether those deportation proceedings were valid, is
24 irrelevant because the government relied solely on the February 1994 deportation to prove the
25 necessary elements of violation under Section 1326. (See supra Part B.ii.)

26    Accordingly, Petitioner's claim of ineffective assistance of counsel on this ground fails.

27        *iv.    Counsel's failure to find out the outcome of the state conviction.*

28    Next, Petitioner alleges that Mr. Morell provided ineffective assistance at sentencing because

1 he failed to learn the outcome of Petitioner's state conviction under Section 11550 of the California
2 Health & Safety Code. (Petitioner's Motion at 12-15.) Petitioner notes that, prior to Mr. Morell taking
3 over as his counsel, Ms. Knight informed the Court that the outcome of that state conviction was "a
4 critical issue that [was] going to really impact [Petitioner's] case." (Id. at 12; see also R.T. at 2 (Jan.
5 23, 2006).) After Ms. Knight's withdrawal as counsel, Mr. Morell was supposed to conduct the final
6 step of the investigation into that conviction, in order to determine whether Petitioner actually served
7 the 180 days to which he was sentenced. (Petitioner's Motion at 13-14; see also R.T. at 2 (Jan. 23,
8 2006).)

9 The Court finds, however, that Petitioner has failed to meet his burden in showing that Mr.
10 Morell's actions "'fell below an objective standard of reasonableness.'" See Hebner, 543 F.3d at 1137
11 (quoting Strickland, 466 U.S. at 688). "'In any ineffectiveness case, a particular decision not to
12 investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy
13 measure of deference to counsel's judgments.'" Matylinsky, 577 F.3d at 1093 (quoting Strickland, 466
14 U.S. at 691). In the present case, the Court was aware that Petitioner disputed the entry in the Pre-
15 Sentencing Report regarding his conviction under Section 11550. (See R.T. at 19-21 (Apr. 24, 2006).)
16 The Court, however, agreed with the government that the Report clearly indicated Petitioner was
17 sentenced to 180 days by the state court for that violation, which was to run concurrently with his
18 other sentence at the time. (See id.) Moreover, the Court disagreed with Petitioner's interpretation of
19 the law, ruling instead that what mattered was the time *actually imposed*, rather than that *actually*
20 *served*. (See id. at 6-12.) In light of these rulings, the Court finds Mr. Morell's decision not to conduct
21 further investigation into whether Petitioner actually served the 180-day sentence was objectively
22 reasonable. See Matylinsky, 577 F.3d at 1092-93.

23 In the alternative, the Court finds Petitioner cannot demonstrate any prejudice. The whole
24 purpose for resolving the outcome of the state conviction was to allow Mr. Bejar to give a complete
25 assessment of Petitioner's case. (Petitioner's Motion at 12.) However, as already noted, that
26 assessment, directed at Petitioner's 1997 deportation, was irrelevant to the present case. (See supra
27 Part B.iii.) Moreover, even if the state conviction had some relevance to the February 1994
28 deportation, the Court reaffirms its prior determination that there was no relief available to Petitioner

at that deportation hearing. (See R.T. at 20-21 (Apr. 24, 2006).)

Accordingly, Petitioner's claim of ineffective assistance fails on this ground as well.

*v.     Counsel's concession that there was no relief available.*

Finally, Petitioner's Motion can also be read to allege that Mr. Morell provided ineffective assistance by conceding at the sentencing stage that, after reading everything, he believed that there was nothing on any of Petitioner's four deportations that could save him from the Court's judgment. (See Petitioner's Motion at 15.) Petitioner, however, "'bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy.'" Matylinsky, 577 F.3d at 1091 (quoting Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001)). In light of the above discussion on the validity of the February 1994 deportation, and the fact that the government did not rely on any of the other deportations in its case-in-chief (see supra Part B.i-ii), the Court cannot conclude that Mr. Morell's concession was unreasonable.

Accordingly, Petitioner's claim of ineffective assistance fails on this ground.

**II.    Unreasonable sentence**

A.    Legal standard

Following the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the district court should begin all sentencing proceedings "by determining the applicable [Sentencing] Guidelines range." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted). Next, "[t]he parties must be given a chance to argue for a sentence they believe is appropriate." Id. "The district court should then consider [the sentencing factors set forth in 18 U.S.C. § 3553(a)] to decide if they support the sentence suggested by the parties . . . ." Id.

Any sentence imposed is reviewed for reasonableness in light of the Section 3553(a) factors. See Gall v. United States, 128 S. Ct. 586, 596-97 (2007). Although a number of Circuits use a "presumption of reasonableness" for within-Guidelines sentences, see Carty, 520 F.3d at 993 & n.9, the Ninth Circuit expressly declined to adopt that view. Id. at 993-94. However, "[t]he difference [between the two approaches] appears more linguistic than practical." Id. at 994. Thus, despite the absence of a "presumption of reasonableness," a within-Guidelines sentence "'will usually be reasonable.'" Id. (quoting Rita v. United States, 551 U.S. 338, 351 (2007)).

B.     Analysis

Petitioner argues his 86-month sentence was unreasonable. Specifically, he contends it was not appropriate for the Court to compare this sentence to his previous sentence for illegal reentry, seeing as the previous sentence was imposed under a mandatory Guidelines scheme. (Petitioner's Motion at 16.) Moreover, he argues that the Ninth Circuit has not yet determined whether a within-Guidelines sentence can be considered "presumptively reasonable." (Id.)

The Court finds the 86-month sentence was reasonable. In sentencing Petitioner, the Court followed the required post-Booker approach. See Carty, 520 F.3d at 993-94. First, the Court determined the applicable Sentencing Guidelines range. See id. at 991. In doing so, the Court noted Petitioner was in a criminal history category 5 and that the total adjusted offense level was a 22. (R.T. at 22-23 (Apr. 24, 2006).) Next, the Court indicated it had "taken into consideration all of the factors [under § 3553(a)]" and it was aware the Guidelines provided only one of the relevant factors. (Id. at 22.) Nevertheless, the Court decided the Guidelines should apply in this case due to Petitioner's significant criminal history. (Id.) Finally, the Court considered, but rejected, Petitioner's objections to the Pre-Sentencing Report and his proposed departures from the Guidelines. (Id. at 22-23.)

Petitioner's arguments as to why the sentence is unreasonable are unpersuasive. First, contrary to Petitioner's allegations, this Court never based its sentencing decision on the fact that the sentence "'was not' significantly longer than [his] last sentence." (See Petitioner's Motion at 16.) Rather, this was the language used by the Ninth Circuit in finding that the 86-month sentence was reasonable. See Vargas-Galicia, 253 Fed. Appx. at 716 ("Vargas's sentence fell in the middle of the Guidelines range and was not substantially greater than his previous sentence for illegal reentry."). Second, contrary to Petitioner's suppositions, the Ninth Circuit has expressly addressed the question of whether a within-Guidelines sentence is "presumptively reasonable." See Carty, 520 F.3d at 993-94. Although the court declined to adopt the "presumption" framework, it did conclude that a within-Guidelines sentence "'will usually be reasonable.'" Id. at 994 (quoting Rita, 551 U.S. at 351). In the present case, seeing as the imposed sentence was within the 77 to 96 months Guidelines range (see R.T. at 25 (Apr. 24, 2006)), and because the Court followed the proper steps in calculating that sentence, see Carty, 520 F.3d at 990-93, the Court imposed a reasonable sentence.

### III. Evidentiary hearing

For all of the above reasons the Court also concludes that it can proceed without an evidentiary hearing because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Indeed, the record is clear that Ms. Knight and Mr. Morell were more than reasonably diligent in presenting Petitioner's numerous arguments and objections to the Court. (See, e.g., R.T. at 17 (June 24, 2005) (praising Ms. Knight for "a very outstanding job" in litigating the validity of the February 1994 deportation); R.T. at 4-7 (Apr. 24, 2006) (noting that Mr. Morell had been before the Court numerous times, despite his belief that there was no remedy available for Petitioner at the 1994 deportation proceedings).)

Accordingly, the Court determines it can proceed without an evidentiary hearing.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Clerk of the Court is ordered to close the case. In addition, the Court denies Petitioner a certificate of appealability. See 28 U.S.C. § 2253(c) (providing that a certificate of appealability shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right"); Slack v. McDaniel, 529 U.S. 473, 484 (2000) ("Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").

**IT IS SO ORDERED.**

DATED: October 23, 2009

_____
IRMA E. GONZALEZ, Chief Judge
United States District Court